JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| William K. Serp | Robert Davis, et al |

**(b)** County of Residence of First Listed Plaintiff  Cook county, IL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)* Jennifer Agnew
Trujilo Rodriguez and Richards, LLC (F)
1717 Arch Street, Suite 3838      215-731-7044
Philadelphia, PA. 19103 (P) 215-731-9004

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 690 Other | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | **PERSONAL INJURY** | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | ☐ 365 Personal Injury - | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 367 Health Care/ | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Pharmaceutical | | ☐ 480 Consumer Credit |
| (Excl. Veterans) | ☐ 345 Marine Product | Personal Injury | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | Product Liability | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 368 Asbestos Personal | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Injury Product | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | Liability | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | **PERSONAL PROPERTY** | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 370 Other Fraud | Leave Act | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | ☐ 371 Truth in Lending | ☐ 790 Other Labor Litigation | | Act |
| | Med. Malpractice | ☐ 380 Other Personal | ☐ 791 Empl. Ret. Inc. | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | Property Damage | Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 385 Property Damage | | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | Product Liability | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | **PRISONER PETITIONS** | **IMMIGRATION** | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | ☐ 510 Motions to Vacate | ☐ 462 Naturalization Application | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | Sentence | ☐ 463 Habeas Corpus - | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | **Habeas Corpus:** | Alien Detainee | | |
| | Employment | ☐ 530 General | (Prisoner Petition) | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 535 Death Penalty | ☐ 465 Other Immigration | | |
| | Other | ☐ 540 Mandamus & Other | Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
*(specify)*

☐ 6 Multidistrict
Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 USC sec. 78aa and 15 USC sec. 78n(a)
Brief description of cause: shareholder's suit based on materially misleading registration
statement and breach of fiduciary duties

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE                    DOCKET NUMBER

DATE  5/9/12

SIGNATURE OF ATTORNEY OF RECORD
Jennifer Agnew

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 1240 Broadcasting Road, Wyomissing, PA 19610

Address of Defendant: The Commons, P.O. Box 460, Ithaca, New York, 14851

Place of Accident, Incident or Transaction: Berks County
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes□   No☒

Does this case involve multidistrict litigation possibilities?   Yes□   No□
*RELATED CASE, IF ANY:*
Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes□   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes□   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes□   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes□   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. □ Indemnity Contract, Marine Contract, and All Other Contracts
2. □ FELA
3. □ Jones Act-Personal Injury
4. □ Antitrust
5. □ Patent
6. □ Labor-Management Relations
7. □ Civil Rights
8. □ Habeas Corpus
9. ☒ Securities Act(s) Cases
10. □ Social Security Review Cases
11. □ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. □ Insurance Contract and Other Contracts
2. □ Airplane Personal Injury
3. □ Assault, Defamation
4. □ Marine Personal Injury
5. □ Motor Vehicle Personal Injury
6. □ Other Personal Injury (Please specify)
7. □ Products Liability
8. □ Products Liability — Asbestos
9. □ All other Diversity Cases
    (Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Jennifer Agnew , counsel of record do hereby certify:

□ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 5/9/2012       *Jennifer Agnew*       206673
                      Attorney-at-Law              Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 5/9/2012       *Jennifer Agnew*       206673
                      Attorney-at-Law              Attorney I.D.#

CIV. 609 (5/2012)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

William K. Serp : CIVIL ACTION
:
v. :
:
Robert Davis, et al : NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)　　　　(X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　　　( )

| | | |
|---|---|---|
| _5/9/2012_ | _Jennifer Agnew_ | _Plaintiff_ |
| **Date** | **Attorney-at-law** | **Attorney for** |
| _(215) 731-9004_ | _(215) 731- 9044_ | _jagnew@trrlaw.com_ |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM K. SERP, individually and on behalf of all others similarly situated, and derivatively on behalf of VIST FINANCIAL CORPORATION | : <br> : <br> : <br> : |
| Plaintiff, | **Civil Action No.:** <br> : <br> : |
| v. | **COMPLAINT** |
| ROBERT DAVIS, PATRICK J. CALLAHAN, CHARLES J. HOPKINS, MICHAEL J. O'DONOGHUE, JAMES H. BURTON, ROBERT D. CARL, III, PHILIP E. HUGHES, JR. FRANK C. MILEWSKI, HARRY J. O'NEILL,III, ANDREW J. KUZNESKI, III, M. DOMER LEIBENSPERGER, KAREN A. RIGHTMIRE, ALFRED J. WEBER, VIST FINANCIAL CORPORATION, TOMPKINS FINANCIAL CORPORATION, and TMP MERGECO, INC. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : **JURY TRIAL DEMANDED** |
| Defendants. | : <br> : |
| and | : <br> : |
| VIST FINANCIAL CORPORATION, a Pennsylvania corporation, | : <br> : |
| Nominal Defendant | : <br> : <br> : |

**DERIVATIVE AND INDIVIDUAL COMPLAINT**

Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

1.    Plaintiff brings this derivative action on behalf of the public stockholders of VIST Financial Corp. ("VIST" or the "Company") against VIST's Board of Directors (the "Board" or the "Individual Defendants") for their breaches of fiduciary duties arising out of the proposed merger with Tompkins Financial Corporation ("Tompkins") offering inadequate consideration to VIST shareholders and providing insufficient and materially misleading information to shareholders in the registration statement/joint proxy.    Additionally, Plaintiff, individually, brings a claim against Defendants for their violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

2.    On January 25, 2012, VIST and Tompkins entered into an Agreement and Plan of Merger (the "Merger Agreement"), under which Tompkins, through its wholly owned subsidiary TMP Mergeco. Inc., ("Merger Sub"), will acquire all of the outstanding shares of VIST in an all-stock transaction (the "Proposed Transaction").    Pursuant to the terms of the Proposed Transaction, VIST shareholders will receive 0.3127 shares of Tompkins common stock in exchange for each share of VIST common stock they own, subject to certain adjustments at the time of the merger.

3.    The Proposed Transaction, however, is unfair to VIST shareholders, as it does not offer them adequate consideration, and is going to be effected through the dissemination of a materially false and misleading proxy statement, as demonstrated by the Proxy Statement filed by VIST with the Securities and Exchange Commission ("SEC") via Tompkins' Form S-4 Registration Statement on April 19, 2012 (the "Registration Statement").

4.    The Board has breached their fiduciary duties by agreeing to the Proposed Transaction for inadequate consideration. As described in more detail below, the exchange ratio VIST shareholders are to receive in the Proposed Transaction is inadequate and undervalues

2

VIST. In fact, the Company's own financial adviser, Stifel, Nicolaus & Company, Incorporated ("Stifel"), valued the Company as high as $14.39 per share.

5.      Moreover, despite the obvious conflicts of interest of the Company's executive officers, who, as described below, have procured post-transaction benefits from the Proposed Transaction, the Board sat idly by and provided little-to-no oversight as the Company's executive officers ran the sales process and procured for themselves the substantial benefits described below to the detriment of the Company's public shareholders. There was no check on the senior management of the Company during their meetings with Tompkins and the other interested parties to ensure that they were acting on the Company's shareholders' best interests, as opposed to their own.

6.      In addition, on April 19, 2012, Tompkins filed the Registration Statement in connection with the Proposed Transaction. The Registration Statement fails to provide the Company's shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision on whether to approve the Proposed Transaction. Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder, by omitting material facts necessary to render the Preliminary Proxy non-misleading. Defendants have also breached their fiduciary duty of candor by failing to disclose material information to the VIST shareholders necessary for them to make an informed vote on the Proposed Transaction.

7.      The Individual Defendants have breached their fiduciary duties of loyalty, due care, independence, good faith, fair dealing, and candor, and VIST, Tompkins, and Merger Sub have aided and abetted such breaches by VIST's officers and directors. Plaintiff seeks to enjoin the defendants from taking any steps to consummate the Proposed Transaction or, in the event

3

the Proposed Transaction is consummated, recover damages resulting from the Defendants' violation of their fiduciary duties of loyalty, good faith, due care, and full and fair disclosure.

## PARTIES

8.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of VIST.

9.     VIST is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania. VIST maintains its principal corporate offices at 1240 Broadcasting Road, Wyomissing, Pennsylvania 19610. VIST operates as the holding company for VIST Bank that provides commercial and consumer banking products and services. VIST Bank operates as a community bank with 21 branch offices in southeastern Pennsylvania, serving Berks, Montgomery, Philadelphia, Chester, Delaware and Schuylkill Counties.

10.     Defendant Robert Davis ("Davis") is the President and Chief Executive Officer of the Company. Davis has been a director of the Company since 2005.

11.     Defendant Patrick J. Callahan ("Callahan") has been a director of the Company since 2004.

12.     Defendant Charles J. Hopkins ("Hopkins") has been a director of the Company since 1999.

13.     Defendant Michael J. O'Donoghue ("O'Donoghue") has been a director of the Company since 2004.

14.     Defendant James H. Burton ("Burton") has been a director of the Company since 2000.

15.     Defendant Robert D. Carl, III ("Carl") has been a director of the Company since 2008.

16.     Defendant Philip E. Hughes, Jr. ("Hughes") has been a director of the Company since 2005.

17.     Defendant Frank C. Milewski ("Milewski") has been a director of the Company since 2002.

18.     Defendant Harry J. O'Neill, III ("O'Neill") has been a director of the Company since 1984.

19.     Defendant Andrew J. Kuzneski, III ("Kuzneski") has been a director of the Company since 2007.

20.     Defendant M. Domer Leibensperger ("Leibensperger") has been a director of the Company since 2005.

21.     Defendant Karen A. Rightmire ("Rightmire") has been a director of the Company since 1994.

22.     Defendant Alfred J. Weber ("Weber") has been a director of the Company since 1995.

23.     Defendants referenced in ¶¶ 10 through 22 are collectively referred to as Individual Defendants and/or the Board.

24.     Defendant Tompkins is a New York corporation with its headquarters located at The Commons, PO Box 460, Ithaca, New York 14851. Tompkins operates 45 banking offices in the New York State markets served by the Company's three community banks - Tompkins Trust Company, The Bank of Castile, and Mahopac National Bank, insurance through Tompkins Insurance Agencies, Inc. and wealth management through Tompkins Financial Advisors.

25.     Defendant Merger Sub is a New York corporation wholly owned by Tompkins that was created for the purposes of effectuating the Proposed Transaction.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] and 28 U.S.C. § 1331. The claims asserted herein arise under Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Pennsylvania common law. This court has jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

27.     Venue is proper in this District because many of the acts and practices complained of herein occurred in substantial part in this District, including the dissemination of the materially misleading statements and omissions alleged herein.   Defendant VIST is headquartered in this District

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

28.     By reason of Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public shareholders of VIST and owe them, as well as the Company, a duty of highest good faith, fair dealing, loyalty and full, candid and adequate disclosure.

29.     To diligently comply with their fiduciary duties, the Individual Defendants may not take any action that:

     (a)     adversely affects the value provided to the corporation's shareholders;

     (b)     favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

6

(c)     adversely affects their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(d)     will provide the Individual Defendants with preferential treatment at the expense of, or separate from, the public shareholders.

30.     In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from:

(a)     participating in any transaction where the Individual Defendants' loyalties are divided;

(b)     participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

31.     Defendants also owe the Company's stockholders a duty of candor, which includes the disclosure of all material facts concerning the Proposed Transaction and, particularly, the fairness of the price offered for the stockholders' equity interest. Defendants are knowingly or recklessly breaching their fiduciary duty of candor by failing to disclose all material information concerning the Proposed Transaction, and/or aiding and abetting other Defendants' breaches.

32.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty and good faith owed to plaintiff and other public shareholders of VIST, or are aiding and abetting others in violating those duties.

**DERIVATIVE ALLEGATIONS AND PLAINTIFF'S DEMAND ON THE BOARD**

33.     Plaintiff brings this action derivatively in the right and for the benefit of VIST to redress injuries suffered, and to be suffered, by VIST as a direct result of breaches of fiduciary duty by the Individual Defendants. As to the derivative claims, VIST is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

34.     Plaintiff will adequately and fairly represent the interests of VIST in enforcing and prosecuting its rights.

35.     Plaintiff was a shareholder of VIST at the time of the wrongdoing of which plaintiff complains and has been continuously since.

36.     Plaintiff made an initial demand on the Board on February 6, 2012 alleging that the consideration offered in the Proposed Transaction is inadequate and undervalues the Company. Plaintiff demanded that the Board take action to ensure that the consideration provided in the Proposed Transaction is fair to VIST and its shareholders, ensure that all material facts are disclosed to the shareholders in any communications concerning the proposed transaction, including any proxy solicitation, and to otherwise recover for the benefit of the Company the damages described herein immediately.

37.     Counsel for VIST and the Board responded to Plaintiff's demand on February 21, 2012, indicating that they would have a response shortly. On April 13, 2012, counsel for the Company and the Board sent Plaintiff's counsel a letter enclosing a copy of VIST's Form 8-K filed with the SEC on April 10, 2012 (the "8-K"). The 8-K stated that on March 21, 2012, the Company's Board formed a special litigation committee (the "Committee") to review and

investigate Plaintiff's allegations. Plaintiff has heard nothing further from counsel for VIST and the Board. Thus, Plaintiff alleges that Defendants have constructively denied his demand.

38.     Even if the Court does not deem Plaintiff's demand to have been constructively denied, demand is excused under ALI § 7.03(b) because any further delay in awaiting a response to the demand would cause irreparable injury to the Company as a vote on the Proposed Transaction is imminent. Given that the Registration Statement was filed on April 19, 2012, the final definitive joint proxy statement could be filed at any time. Based on this, Plaintiffs anticipate that a shareholder vote on the Proposed Transaction is likely to take place in the next 30 - 45 days. If the Proposed Transaction is allowed to be consummated prior to the adjudication of these claims, the Company will suffer irreparable harm and Plaintiff's ability to prosecute these claims will be irrevocably prejudiced. Thus, demand should be excused.

## FURTHER SUBSTANTIVE ALLEGATIONS

39.     VIST operates as the holding company for VIST Bank that provides commercial and consumer banking products and services. VIST Bank operates as a community bank with 21 branch offices in southeastern Pennsylvania, serving Berks, Montgomery, Philadelphia, Chester, Delaware and Schuylkill Counties.

40.     Tompkins operates 45 banking offices in the New York State markets served by the Company's three community banks - Tompkins Trust Company, The Bank of Castile, and Mahopac National Bank, insurance through Tompkins Insurance Agencies, Inc. and wealth management through Tompkins Financial Advisors.

41.     In a press release dated January 25, 2012, the Company announced that it had entered into a merger agreement with Tompkins pursuant to which Tompkins, through Merger Sub, will acquire all of the outstanding shares of the Company in an all stock transaction.

9

42.     Pursuant to the terms of the Proposed Transaction, VIST shareholders will receive 0.3127 shares of Tompkins common stock for each share of VIST common stock they hold, subject to certain adjustments. The exchange ratio is subject to adjustment based on the average of the closing prices of Tompkins common stock for the 20 business days ending three business days prior to the VIST shareholder meeting called to consider the Merger Agreement (the "Average Closing Price"). If the Average Closing Price is more than $43.98, the exchange ratio shall be 0.2842; and if the average closing price is less than $35.98, the exchange ratio will be 0.3475.

43.     In other words, if the Average Closing Price is between $35.98 and $43.98 per share, the exchange ratio will be 0.3127 and VIST shareholders will receive a Proposed Transaction value of somewhere between $11.25 and $13.75 per share. If the Average Closing Price is above $43.98, the exchange ratio will be 0.2842 equating to a Proposed Transaction price of $12.50 or more.   If the Average Closing Price is below $35.98, the exchange ratio will be 0.3475 equating to a Proposed Transaction price of $12.50 or less. Examples, as displayed in the Registration Statement, are indicated in the chart below:

| | SAMPLE TOMPKINS AVERAGE CLOSING PRICES (20-DAY AVERAGE, FROM • , 2012 TO • , 2012) | | | | | | |
|---|---|---|---|---|---|---|---|
| | $32.00 | $35.86 | $35.87 | $39.85 | $43.84 | $43.85 | $47.82 |
| **Effective Purchase Price per VIST share:** | $ 11.12 | $ 12.50 | $ 11.25 | $ 12.50 | $ 13.75 | $ 12.50 | $ 13.59 |

44.     The exchange ratio and the Proposed Transaction consideration is inadequate and undervalues the Company.

45.     According to Yahoo Finance, as of March 31, 2012, VIST has a book value of $13.81 per share, which is above the Proposed Transaction value of $12.50 per share.

46. The *Analysis of Selected Bank Merger Transactions* conducted by Stifel, the Company's financial advisor indicated a per share value of the Company as high as $14.39 per share.

47. The *Discounted Dividends Analysis* conducted by Stifel indicated a per share value of the Company as high as $13.31 per share.

48. In addition, the 0.3217 exchange ratio does not adequately compensate VIST's shareholders for the Company's contributions to the post-merger company. In particular, VIST has $1.4 billion in assets, $1.2 billion in deposits and $960 million in loans. Meanwhile, Tompkins has $3.4 billions in assets, $2.6 billion in deposits, and approximately $1.95 billion in loans. Based on their respective contributions to the post-merger company, the exchange ratio is too low and does not provide VIST shareholders with a fair stake in the combined company. ,

49. Moreover, VIST has been performing well recently. For example, for the first nine months of 2011, the Company reported net income of $3.2 million, as compared to $2.6 million for the same period in 2010. Basic and diluted earnings per common share were $0.30 for the first nine months of 2011, as compared to basic and diluted earnings per common share of $0.22 for the same period in 2010. In addition, total assets increased by approximately $125.0 million or 9%, to $1.49 billion at September 30, 2011 from $1.36 billion at September 30, 2010. Total deposits increased by approximately $137.1 million or 13%, to $1.22 billion at September 30, 2011 from $1.08 billion at September 30, 2010.

50. Accordingly, the exchange ratio and the resulting Proposed Transaction consideration is inadequate and undervalues the Company.

**VIST's Officers and Directors Obtained Special Benefits for Themselves**

51. The Company's executive officers and directors have material conflicts of interest and are acting to better their own personal interests through the Proposed Transaction at the

11

expense of VIST's public shareholders. As stated in the Registration Statement, "VIST shareholders should be aware that VIST directors and executive officers have financial interests in the merger that may be different from, or in addition to, those of VIST shareholders generally."

52. The Proposed Transaction is wrought with conflicts of interest resulting from the Board providing little to no oversight during negotiations, and permitting management to conduct the process with an eye towards obtaining substantial benefits for themselves, as described more fully below.

53. On September 1, 2011, defendant Davis and Edward C. Barrett ("Barrett"), VIST's Chief Financial Officer, attended a meeting requested by a large regional bankholding company, described in the Registration Statement as Company A. At the meeting, Company A indicated its interest in pursuing a business combination with VIST.

54. Following the receipt of Company A's indication of interest, on October 13, 2011, the Board determined to engage Stifel as its financial advisor and initiate a process to seek out other potential acquirers. Rather than become involved in the process, however, the Board left the selection of the parties to contact in the hands of senior management.

55. As stated in the Registration Statement, "Stifel initiated contact with a total of six selected parties *provided by management* based on discussions with Stifel."

56. Thereafter, senior management of the Company had unsupervised meetings and discussions with a number of the interested parties, including Tompkins. For example, as stated in the Registration Statement, "on November 17, 2011, members of VIST's senior management participated in a conference call with members of Tompkins' senior management" and "on

November 22, 2011, members of VIST's senior management and Stifel met separately with representatives of Company B and Company C."

57.     Moreover, despite the obvious conflicts of interest of the Company's executive officers, who, as demonstrated herein, have procured post-transaction benefits from the Proposed Transaction, the Board sat idly by and provided little-to-no oversight as the Company's executive officers controlled the sales process and procured for themselves the substantial benefits described above to the detriment of the Company's public shareholders. There was no check on the senior management of the Company during their meetings with Tompkins and the other interested parties to ensure that they were acting on the Company's shareholders' best interests, as opposed to their own.

58.     As a result of being permitted by the Board to conduct the negotiations, certain of the Company's executive officers have procured post-transaction employment with the resulting combined company.  For example, defendant Davis, the President and CEO of VIST and VIST Bank will continue as President and CEO of VIST Bank following completion of the Proposed Transaction.  As stated in the press release announcing the Proposed Transaction, "Robert D. Davis, the current President and Chief Executive Officer of VIST and VIST Bank, will continue as President and Chief Executive of VIST Bank following completion of the Merger."   As further stated in the Registration Statement: "Robert Davis and Tompkins are currently negotiating an amendment to Mr. Davis' current agreement with VIST, which amendment addresses the timing and calculation of payments to which Mr. Davis is currently entitled under his existing employment agreement with VIST."

59.     In addition, as stated in the Registration Statement, certain "key employees" of VIST will have new employment agreements with Tompkins, including executive officers Louis

13

J. DeCesare, Jr., Michael Herr, Christina McDonald, Neena Miller and James Turner. As stated

in the Registration Statement:

> Tompkins' obligation to complete the merger is conditioned upon the execution
> and delivery of employment agreements by certain of VIST's key employees, on
> terms and conditions satisfactory to Tompkins. These employment agreements are
> currently being negotiated between Tompkins and these employees, and the
> agreements will contain customary confidentiality, non-solicitation and non-
> competition covenants. It is also expected that most of these agreements will
> provide for annual retention incentives, or "stay bonuses," of $20,000 for each
> year of completed service following the merger, for a total of two (2) years,
> resulting in an aggregate potential retention bonus of $40,000 for each of these
> VIST executives.

60. Five current VIST directors will become directors of VIST Bank following

consummation of the Proposed Transaction. Two current VIST directors will be appointed to

serve as directors on Tompkins' board of directors, and two current VIST directors will also be

nominated for election to Tompkins' board at Tompkins' first annual meeting after the Proposed

Transaction is completed. As stated in the Registration Statement:

> Tompkins has agreed in the merger agreement that two (2) current members of
> VIST's board of directors will be appointed to serve on the board of directors of
> Tompkins upon consummation of the merger. Such directors will be mutually
> identified by Tompkins and VIST, and they must meet the minimum
> qualifications required for service on the Tompkins board of directors. In
> addition, two (2) members of the current VIST board of directors—which persons
> may or may not be those selected to fill the vacancies described above—will be
> nominated for election at the first annual meeting of Tompkins following the
> merger, and such nominees must also meet the minimum qualifications required
> for service on the Tompkins board of directors. Finally, Tompkins has agreed,
> following the merger, to initially nominate and elect to the board of directors of
> VIST Bank at least five (5) persons selected from the current board of directors of
> VIST; and such persons must meet the minimum qualifications required for
> service on the Tompkins board of directors.

61. Moreover, the Company's officers and directors hold unvested stock options and

restricted stock options of the Company that will immediately vest in full upon adoption of the

14

Merger Agreement. The Registration Statement, however, fails to, but should disclose the number of unvested stock options and restricted stock units held by each officer and director.

62.     Based on the above, the Proposed Transaction reflects an effort by the Individual Defendants and other Company insiders to aggrandize their own financial position and interests at the expense of and to the detriment of VIST's public shareholders.

### The Materially Misleading and Incomplete Registration Statement

63.     To make matters worse, defendants are not only withholding material information about the Proposed Transaction from VIST's public shareholders, but have also provided them with materially misleading information. The Registration Statement, pursuant to which the Board has recommended that VIST shareholders vote in favor of the Proposed Transaction, contains numerous material omissions and misstatements, rendering VIST shareholders unable to make an informed decision regarding the Proposed Transaction.

64.     The Registration Statement fails to disclose material information concerning the financial forecasts of VIST and Tompkins reviewed by Stifel in connection with its fairness opinion. In particular, the Registration Statement:

(a)     Fails to disclose the financial forecasts of the Company prepared by VIST management, including the free cash flow forecasts for years 2012 through 2016 used by Stifel in its *Discounted Dividends Analysis*;

(b)     Fails to disclose the financial forecasts of Tompkins reviewed by Stifel;

(c)     Fails to disclose whether, and if so, how, Stifel used the financial forecasts of Tompkins in its various financial analyses; and

(d)    Fails to disclose the assumptions used by VIST and Tompkins in preparing the financial forecasts provided to Stifel.

65.    Information regarding the forecasts of both VIST and Tompkins is material to VIST shareholders given the change of control taking place in the transaction. The absence of this information regarding VIST's forecasts in the Registration Statement is a material omission that renders the *Discounted Dividends Analysis* in which managements' free cash flow forecasts for years 2012 through 2016 were used misleading. The absence of information regarding Tompkins' forecasts renders statements pertaining to the potential synergies, potential growth prospects, and potential accretion to earnings post merger misleading.

66.    The Registration Statement states that "the success of the merger will depend, in part, on Tompkins' ability to realize the estimated cost-savings from combining the businesses of Tompkins and VIST. Tompkins' management estimated at the time the proposed merger was announced that it believes it can achieve total cost-savings of approximately $8.9 million, to be phased in between 2012 and 2014." The Registration Statement should disclose the nature of the $8.9 million in cost-savings, including any estimates regarding these cost-savings that were prepared by VIST and/or Tompkins, the amount of savings expected to be realized in each of 2012, 2013, and 2014, and additional detail regarding the likelihood and risks of achieving the $8.9 million in cost-savings.

67.    The omission of this information regarding the cost savings is material to shareholders' understanding of the potential benefits of the Proposed Transaction. The omission of underlying information and details renders the conclusory statements regarding cost savings misleading.

68.     The Registration Statement is materially misleading with respect to the percentage of the combined company that will be owned by VIST shareholders. For example, on page 20 of the Registration Statement, it states that VIST shareholders will "own approximately 19% of the combined company" while on page 39 of the Registration Statement, it states that "utilizing the exchange ratio of .3127, it is anticipated that VIST common shareholders will own approximately 14.6% of the voting stock of the combined company after the merger." The Registration Statement must accurately disclose the relationship between the exchange ratio/collar and the resulting percentage ownership of VIST shareholders in the combined company.

69.     The Registration Statement also fails to disclose certain data and inputs underlying the financial analyses supporting the fairness opinion of the Board's financial advisor, Stifel, including:

(a)     with respect to the *Comparison of Selected Companies*, the multiples observed for each of the comparable companies, and the range of imputed values for VIST calculated for each multiple (e.g. the range calculated for Price per share/Tangible Book Value per share) using the entire resulting range (i.e. low to high, or 25% to 75%, not just median);

(b)     with respect to the *Analysis of Selected Bank Merger Transactions*, the announcement date of each of the comparable transactions, the multiples observed for each of the comparable transactions, and the range of imputed values for VIST calculated for each multiple (e.g. the range calculated for Price per share/Tangible Book Value per share) using the entire resulting range (i.e. low to high, or 25% to 75%, not just median);

(c)     with respect to the *Discounted Dividends Analysis*, management's estimates and/or forecasts used in the analysis, the definition of "dividendable net income" used

17

by Stifel in the analysis, the criteria used to select the 15.0% to 20.0% discount rate range used in the analysis; the criteria used to select multiples ranging from 10.0 times to 14.0 times 2017 forecasted earnings, and the criteria used to select the 8.0% growth rate used in the analysis;

        (d)    with respect to the *Pro Forma Effect of the Merger* analysis, the "future operating and financial information developed by VIST and Tompkins" and "estimated future operating and financial information for the pro forma combined entity resulting from the merger" used by Stifel in this analysis; VIST's "estimated future per share results" derived by Stifel in this analysis and the calculations used by Stifel to derive such future share price results; and the amount of accretion and dilution observed in the analysis; and

        (e)    fails to disclose the reasons Stifel did not conduct any financial analyses to determine the implied per share value of Tompkins.

    70.    This information which formed the basis for Stifel's various analyses is material to shareholders. Without an understanding of the underlying inputs and objective criteria used by Stifel in its analyses, shareholders have no understanding of what factors influenced the financial advisor's analysis, thereby rendering all statements pertaining to the analysis misleading.

    71.    The Registration Statement states that on December 28, 2011, the Board reviewed Tompkins' revised offer. As stated in the Registration Statement:

> The revised Tompkins offer was for a 100% stock transaction with a fixed exchange ratio within a 10% collar based on Tompkins 20-day average stock price designed to result in a value of $12.50 per share for VIST common shareholders. Based on the 20-day average Tompkins stock price for the period ending December 22, 2011, the fixed exchange ratio within the collars would be 0.319 shares of Tompkins common stock for each VIST share of common stock.

As further stated in the Registration, at the conclusion of the meeting, the Board determined to unanimously accept Tompkins' offer. The Registration Statement:

(a)     Fails to disclose whether, and if so, how the Board evaluated the intrinsic value of Tompkins and the per share value of Tompkins's offer prior to accepting the offer;

(b)     Fails to disclose whether, and if so, the reasons considered by the Board in determining the value of the offer to equate to $12.50 per share;

(c)     Fails to disclose how the exchange ratio changed from the 0.319 shares discussed by the Board on December 28, 2011 to the agreed-upon exchange ratio of 0.3127; and

(d)     Fails to disclose the reasons the Board did not attempt to further negotiate the terms of the collar.

72.     This information which bears directly on the process undertaken by the Board and the fairness of the consideration offered to VIST's shareholders is material. The omission of this information regarding the process and consideration obtained renders the statement that the VIST Board "carefully considered the process by which potentially interested acquirers were identified, the indications of interest that were received, the terms of the merger agreement and the value of the merger consideration to be received by the holders of VIST common stock" misleading.

73.     The Registration Statement fails to disclose material information concerning the Board's consideration of the three indications of interest received (from Company A, Company B, and Tompkins) and the Company's discussions and negotiations with the three interested parties. This information is important in determining whether the Board and other Company insiders properly considered each of the three offers including whether the Board and other Company insiders had reason to favor Tompkins over companies A and B. In particular, the Registration Statement states that on November 28, 2011, VIST received indications of interest

19

from three parties, Company A, Company B, and Tompkins. As stated in the Registration Statement:

> The initial indication of interest letters received from the three parties provided for per share merger consideration of $11.00 to $12.00 (Company A), $11.50 to $13.50 (Company B), and $11.00 to $12.50 (Tompkins). The indication of interest from Company A provided for consideration in the form of common stock and cash (with a maximum of 25% cash), and the indications of interest from both Company B and Tompkins provided for 100% common stock consideration.

On December 2, 1011, the Board met and reviewed "the financial terms of the indications of interest received, as well as a comparison of the non-financial terms of the indications of interest and a summary of each of Tompkins, Company A and Company B." The Registration Statement fails to disclose material information concerning the Board's consideration of each of the three indications of interest including:

        (a)    the financial terms of each of the indications of interest, including exchange ratios offered, the terms of any collars, and how the per share values were calculated;

        (b)    the non-financial terms of the indications of interest that were reviewed by the Board;

        (c)    whether, and if so, how the Board evaluated the intrinsic value of each of the three companies (including the nature of any financial analyses reviewed), which is important considering each of the three indications of interest consisted at least partly in stock consideration;

        (d)    what the Board determined with respect to the comparison of the three companies;

74. This information which bears directly on the process undertaken by the Board and the fairness of the consideration offered to VIST's shareholders is material. The omission of this information regarding the interest by three other parties renders the statement that the VIST

Board "carefully considered the process by which potentially interested acquirers were identified, the indications of interest that were received, the terms of the merger agreement and the value of the merger consideration to be received by the holders of VIST common stock" misleading.

75.     The Registration Statement also fails to disclose whether, and if so, when each of the three companies indicated their intent to employ and/or retain VIST's officers, and the terms of any such offers. The Registration Statement should also disclose the terms of any opportunities for directors offered by each of the three companies, including the opportunity to remain as a director in the post-transaction combined company.

76.     This information which bears directly on the process undertaken by the Board and management's potential conflicts of interest is material.   The omission of this information regarding the process and management's potential conflicts of interest obtained renders the statement that the VIST Board "carefully considered the process by which potentially interested acquirers were identified, the indications of interest that were received, the terms of the merger agreement and the value of the merger consideration to be received by the holders of VIST common stock" misleading.

77.     The Registration Statement should also disclose which "members of VIST's senior management" participated in the meetings with Tompkins, Company B, and Company C on November 17 and November 22, 2011, as well as what was discussed at these meetings. The Registration Statement should also disclose whether senior management of the Company engaged in any meetings and discussions with Companies A, D, and E, and if so to disclose the dates and nature of those meetings; and if not, to disclose the reasons no meetings with those companies were arranged.

78.     This information which bears directly on the process undertaken by the Board and management's potential conflicts of interest is material.   The omission of this information regarding the process and management's potential conflicts of interest obtained renders the statement that the VIST Board "carefully considered the process by which potentially interested acquirers were identified, the indications of interest that were received, the terms of the merger agreement and the value of the merger consideration to be received by the holders of VIST common stock" misleading.

79.     The Registration Statement also fails to disclose the reasons provided by Company A and Company B on December 22, 2011 that they were withdrawing from the process.

80.     This information which bears directly on the process undertaken by the Board and the fairness of the consideration offered to VIST's shareholders is material.  The omission of this information regarding the interest by three other parties renders the statement that the VIST Board "carefully considered the process by which potentially interested acquirers were identified, the indications of interest that were received, the terms of the merger agreement and the value of the merger consideration to be received by the holders of VIST common stock" misleading.

81.     The Registration Statement fails to disclose other material information concerning the events leading up the announcement of the Proposed Transaction. In particular, the Registration Statement:

        (a)     Fails to disclose the reasons the Board determined to initiate a process to contact potential merger candidates on October 13, 2011;

(b)     Fails to disclose the criteria used by Company management in selecting the six parties that Stifel contacted in November 2011;

(c)     Fails to disclose the nature of any pre-existing relationship between management of the Company and the six financial institutions that were selected;

(d)     Fails to disclose the reasons management and the Board determined to focus on just six companies as opposed to conducing a broader sales process;

(e)     Fails to disclose how the Stifel capital markets representative present at the November 15, 2011 meeting could not have been "aware" of VIST's consideration of a potential business combination transaction considering that Stifel's investment banking group was also present at this meeting;

(f)     Fails to disclose the reasons provided by Companies C, D, and E that they would not submit an indication of interest; and

(g)     Fails to disclose the reasons provided by the U.S. Department of Treasury that VIST's application to participate in the Treasury's Small Business Lending Fund would not be approved;

82.     This information which bears directly on the process undertaken by the Board is material. The omission of this information regarding the process renders the statement that the VIST Board "carefully considered the process by which potentially interested acquirers were identified, the indications of interest that were received, the terms of the merger agreement and the value of the merger consideration to be received by the holders of VIST common stock" misleading.

83.     The Registration Statement also fails to disclose material information concerning the interests of the Company's officers and directors in the Proposed Transaction. In particular, the Registration Statement:

(a)     Fails to disclose when Tompkins first indicated their intent to retain Davis and other members of VIST senior management upon consummation of the Proposed Transaction as well as when the negotiations regarding their retention began;

(b)     Fails to disclose the terms of the amendment to Davis' current employment agreement with VIST, including the "timing and calculation of payments" Davis is entitled to;

(c)     Fails to disclose the terms and conditions of the new employment agreements with Louis J. DeCesare, Jr., Michael Herr, Christina McDonald, Neena Miller and James Turner;

(d)     States that "Tompkins obligation to complete the merger is conditioned upon the execution and delivery of employment agreements by certain of VIST's key employees, on terms and conditions satisfactory to Tompkins" but fails to disclose all of the "key employees" referred to here;

(e)     Fails to disclose the amount of unvested stock options and restricted units held by each of the Company's officers and directors; and

(f)     Fails to disclose which VIST directors are expected to be elected to the board of VIST Bank upon consummation of the Proposed Transaction, and which VIST directors are expected to serve on the board of Tompkins.

84.     This information which bears directly on the process undertaken by the Board and management and the Board's potential conflicts of interest is material.  The omission of this

information regarding the process and management and the Board's potential conflicts of interest obtained renders the statement that the VIST Board "carefully considered the process by which potentially interested acquirers were identified, the indications of interest that were received, the terms of the merger agreement and the value of the merger consideration to be received by the holders of VIST common stock" misleading

85.     The Registration Statement states that Stifel has "historically provided investment banking services to VIST, including acting as buyside financial advisor in 2010 and 2011 in connection with unconsummated merger transactions for which it received customary fees," but fails to disclose the amount of fees received by Stifel for such services, as well as the reasons VIST did not consummate any such merger transactions it was considering.

86.     This information which bears directly on the process undertaken by the Board and Stifel's potential conflicts of interest is material.  The omission of this information regarding the process and Stifel's potential conflicts of interest obtained renders the statement that the VIST Board "carefully considered the process by which potentially interested acquirers were identified, the indications of interest that were received, the terms of the merger agreement and the value of the merger consideration to be received by the holders of VIST common stock" misleading

87.     The Registration Statement also fails to disclose material information concerning the Board's decision not to pursue the public offering it was considering pursuant to the registration the Company had already filed with the SEC. In particular, the Registration Statement:

        (a)     States that on December 28, 2011, the Board "concluded that the prospects for a successful equity capital raise in an amount sufficient to meet business objectives that

25

would not result in substantial dilution to existing shareholders were not sufficiently positive under current market conditions," but fails to disclose how much capital did the Board consider "an amount sufficient to meet business objectives," what the Board considered "substantial dilution," and the nature of the "current market conditions" being considered by the Board;

(b)     Fails to disclose what compensation Stifel would have received had the Company chosen to pursue the public offering alternative pursuant to the registration statement VIST had on file with the SEC since July 2011; and

(c)     Fails to disclose the "state of the capital markets for financial institution offerings" that was discussed between Stifel and the Board on November 15, 2011.

88.     This information which bears directly on the process undertaken by the Board is material. The omission of this information regarding the process renders the statement that the VIST Board "carefully considered the process by which potentially interested acquirers were identified, the indications of interest that were received, the terms of the merger agreement and the value of the merger consideration to be received by the holders of VIST common stock" misleading.

89.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## LOSS CAUSATION

90.     Defendants' material omissions in the Registration Statement have substantially contributed to the economic loss that Plaintiff has incurred in being asked to vote in favor of the Proposed Transaction.

91.     Plaintiff is being asked to vote in support of the Proposed Transaction pursuant to the Registration Statement. As detailed above, the Registration Statement fails to provide

Plaintiff with material information necessary for him to make an informed decision regarding whether or not to vote in favor of the Proposed Transaction, and has given him materially misleading information.

92.     It is pursuant to this Registration Statement that Plaintiff is being asked to determine whether he believes the consideration offered in the Proposed Transaction is fair and adequate.

93.     Given that VIST has a book value of $13.81 per share, which is above the Proposed Transaction value of $12.50 per share, the *Analysis of Selected Bank Merger Transactions* conducted by Stifel indicated a per share value of the Company as high as $14.39 per share, and the *Discounted Dividends Analysis* conducted by Stifel indicated a per share value of the Company as high as $13.31 per share, the consideration offered in the Proposed Transaction is inadequate.

94.     Thus, this Registration Statement soliciting VIST's shareholders support and containing material omissions demonstrates that the Board has accepted an insufficient price for the Company and is recommending that Plaintiff does the same while failing to provide him with all information necessary to make a decision regarding whether or not to vote in favor of the Proposed Transaction.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of Section 14(a) of the Exchange Act
### and Rule 14a-9 Promulgated Thereunder
### (Brought Individually Against Individual Defendants)

95.     Plaintiff repeats all previous allegations as if set forth in full herein.

96.     Plaintiff brings this claim individually and not on behalf of the class.

97. Defendants have issued the Registration Statement with the intention of soliciting shareholder support of the Proposed Transaction.

98. Rule 14a-9, promulgated by SEC pursuant to Section 14(a) of the Exchange Act provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

99. Specifically, the Registration Statement violates Section 14(a) and Rule 14a-9 because it omits material facts, including those set forth above, and sets forth materially misleading information. Moreover, in the exercise of reasonable care, Defendants should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

100. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

## COUNT II
### For Breach of Fiduciary Duties Against the Individual Defendants
### Brought Derivatively on Behalf of VIST

101. Plaintiff repeats all previous allegations as if set forth in full herein.

102. The Individual Defendants have violated the fiduciary duties of care, loyalty, and candor owed to the public shareholders of VIST and has acted to put their personal interests ahead of the interests of VIST's shareholders.

28

103.    By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiff and VIST shareholders of the true value inherent in and arising from VIST.

104.    The Individual Defendants have violated their fiduciary duties by entering VIST into the Merger Agreement without regard to the effect of the Proposed Transaction on VIST's shareholders.

105.    The fiduciary duties of the Individual Defendants in the circumstances of the Proposed Transaction require them to disclose all information material to the decisions confronting VIST's shareholders. As set forth above, the Individual Defendants have breached their fiduciary duties to the Company through materially inadequate disclosures and material disclosure omissions.

106.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward VIST, plaintiff and the other VIST shareholders.

107.    Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to plaintiff and VIST shareholders, and may consummate the Proposed Transaction which will exclude VIST shareholders from their fair share of VIST's valuable assets and operations, and/or benefit defendants in the unfair manner complained of herein, all to the irreparable harm of VIST shareholders.

108.    As a result of the Individual Defendants' unlawful actions, plaintiff and the other VIST shareholders will be irreparably harmed in that they will not receive their fair portion of the value of VIST's assets and operations. Unless the Proposed Transaction is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to plaintiff

and VIST shareholders, will not engage in arm's-length negotiations on the Proposed Transaction terms and may consummate the Proposed Transaction, all to the irreparable harm of VIST shareholders.

109.    Plaintiff and VIST shareholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and VIST shareholders be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

### COUNT III
### Aiding and Abetting
### (Brought Individually Against VIST, Tompkins, and Merger Sub)

110.    Plaintiff repeats all previous allegations as if set forth in full herein.

111.    As alleged in more detail above, Defendants VIST, Tompkins, and Merger Sub have aided and abetted the Individual Defendants' breaches of fiduciary duties.

112.    As a result, Plaintiff and VIST shareholders are being harmed.

113.    Plaintiff and VIST shareholders have no adequate remedy at law.

### JURY DEMAND

Plaintiff demands trial by jury on all counts for which a jury trial is permitted.

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

(A)    enjoining, preliminarily and permanently, the Proposed Transaction;

(B)    in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(C)     directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(D)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(E)     granting Plaintiff such further relief as the Court deems just and proper.

Dated: May 9, 2011                    TRUJILLO RODRIGUEZ & RICHARDS, LLC

                            By:     _Jennifer Agnew_____
                                    Kenneth I. Trujillo (atty. I.D. 46520)
                                    Ira Neil Richards (atty. I.D. 50879)
                                    Jennifer E. Agnew (atty. I.D. 206673)
                                    1717 Arch Street, Suite 3838
                                    Philadelphia, PA 19103
                                    Telephone: (215) 731-9004
                                    Facsimile: (215) 731-9044
                                    ktrujillo@trrlaw.com
                                    ira@trrlaw.com
                                    jagnew@trrlaw.com

                                    LEVI & KORSINSKY, LLP
                                    Donald J. Enright, Esq.
                                    *(pro hac vice application to be filed)*
                                    Elizabeth K. Tripodi, Esq.
                                    *(pro hac vice application to be filed)*
                                    1101 30th Street, NW, Suite 115
                                    Washington, DC 20007
                                    Tel: (202) 524-4290
                                    Fax: (202) 333-2121

Sent by: William Serp        17082467856            5/8/2012   10:02:50 AM       Page 1 of 2

## FED. R. CIV. P. 23.1 VERIFICATION

I, William Serp, hereby verify that:

• I am Plaintiff in the above-entitled action, have read the foregoing Verified Derivative Complaint, and believe it to be true and correct, and the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

• I am a current shareholder of VIST Financial Corp. and was a shareholder at all relevant times.

William Serp

2